UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **QUALITY CONSTRUCTION & PRODUCTION L L C** | **CASE NO. 6:19-CV-01308** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **TROY COLLINS ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

**MEMORANDUM RULING**

The present matter before the Court is a Motion for Partial Summary Judgment[1] filed by plaintiff Quality Construction & Production, LLC ("Quality") against certain of the former Quality employee defendants named in the complaint (the "MSJ Defendants"). Quality seeks summary judgment on its conversion claims against the MSJ Defendants with respect to cell phone numbers transferred to those former employees, and seeks a judgment requiring that the cell phone numbers be transferred back to Quality's account. For the reasons explained below, the Court DENIES Quality's Motion for Partial Summary Judgment.

**I.
BACKGROUND**

This case involves disputes between Quality and its co-founder and former 50% owner, defendant Troy Collins, as well as certain former employees of the company. Quality provides onshore and offshore services for clients in the maritime and energy production industries. These services include spool piping, production modules, manifolds, deck extensions, riser guards and clamps, hook-ups, facilities maintenance and upgrades, compressor installations and field welding. Quality filed a petition for relief under Chapter 11 of the Bankruptcy Code on March 16, 2018.[2]

---

[1] [ECF No. 16]
[2] *In re Quality Construction & Production, LLC, et al.*, No. 18-50303 (Bankr. W.D.LA. March 16, 2018). [ECF No. 1].

1

At the time of the bankruptcy filing, MidSouth Bank ("MidSouth") was Quality's largest secured creditor with a claim of $15,455,880.[3] Quality filed its first Joint Plan of Reorganization on November 26, 2018.[4] This plan provided that MidSouth's "entire claim will be refinanced in exchange for a lump sum payment of $9,500,000."[5] In return, MidSouth was to "cancel all of its notes and release all of its collateral and guarantees."[6] The plan also created an equity class consisting of Quality's two members: Collins and Nathan Granger.[7] The plan provided that Collins and Granger would retain their equity interest in Quality in exchange for a "new value" contribution of $500,000.[8]

Shortly after Quality filed this first plan, MidSouth assigned its claim to Energy Services Notes Acquisition, LLC ("ESNA").[9] ESNA, in turn, was controlled by Tony Martinez, a former competitor of Quality.[10] ESNA ultimately filed a competing Joint Plan of Reorganization.[11] This competing plan provided that ESNA's claim would be converted to equity in Quality and the other filing debtors, and that ESNA would also receive a Promissory Note.[12] ESNA's competing plan also provided that the equity interest of Collins and Granger would be cancelled.[13] Quality and ESNA subsequently filed amended plans and engaged in extensive litigation in Bankruptcy Court and state court. Collins, Granger, Quality, and ESNA ultimately agreed to settle their disputes and entered into a Settlement Agreement on May 14, 2019. This agreement provides that Collins and

---

[3] *Id.* (Claims Register at Claim No. 136).
[4] *Id.* [ECF No. 362].
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* (Joint Notice of Assignment of Claims pursuant to FRBP 3001(e)(2) and Waiver to Opportunity to Object. [ECF No. 393] This notice was filed December 28, 2018. *Id.*
[10] Declaration of Troy Collins, Exhibit G to Defendant's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment. [ECF No. 20-7].
[11] *In re Quality Construction & Production, LLC, et al.*, No. 18-50303. [ECF No. 532].
[12] *Id.* at 8.
[13] *Id.*

Granger would not oppose ESNA's Joint Plan of Reorganization, including the provisions of the plan providing that their equity interest would be cancelled and ESNA's claim would be converted to an equity interest in the reorganized debtors.[14] The settlement further provided that Collins and Granger would "work in good faith through the Effective Date to effectuate an orderly turnover of all property and equipment, including keys, codes and computer passwords…."[15] ESNA's final Joint Plan was confirmed after a hearing on May 21, 2019, and on May 22, 2019 the Bankruptcy Court entered a Confirmation Order.[16] The controlling equity interest in Quality was transferred to ESNA on the effective date of the plan, May 23, 2019.

Quality alleges that before and after the effective date of the confirmed plan, Collins and the other defendants "embarked upon a coordinated scheme of unfair competition against [Quality] for the benefit of themselves and United Production & Construction Services, Inc."[17] United Production & Construction Services, Inc. ("United") was acquired by Collins and is a competitor of Quality.[18] Quality alleges that this scheme included "converting the assets [Quality], the raiding of [Quality] employees, misappropriation of proprietary data and business records of [Quality], and expenditure of [Quality's] funds for the benefits of themselves and [United]."[19] According to Quality, the defendants who were former employees engaged in this conduct while they were still employed by Quality and after they left their employment with Quality and joined Collins at United.[20] Quality's complaint alleges eight causes of action for violations of the Defend Trade Secrets Act (18 U.S.C. § 1836), violations of the Louisiana Uniform Trade Secrets Act (La. R.S.

---

[14] Exhibit 1-B Defendants' Motion for Summary Judgment [ECF No. 43-5]; *In Re: Quality Construction & Production, LLC*, 18-50303. [ECF Nos. 755, 758].
[15] *In re Quality Construction & Production, LLC*, 18-50303. [ECF No. 755 at 12].
[16] *Id.* [ECF No. 758].
[17] Plaintiff's Complaint. [ECF No. 1 at ¶ 22].
[18] *Id.* At ¶¶ 155-57.
[19] *Id.* at ¶ 23.
[20] *Id.* at ¶ 24-25.

51:1431 *et seq.*), violations of the Computer Fraud Abuse Act (18 U.S.C. § 1030), conversion, breach of fiduciary duty, violations of the Louisiana Unfair Trade Practices and Consumer Practices Act (La. R.S. 51:1401 *et seq.*), conspiracy, and breach of contract.[21]

Quality's Motion for Partial Summary Judgment concerns Quality's allegations that Collins and certain of the former employee defendants wrongfully transferred business cell phone numbers from Quality's cell phone account to the MSJ Defendants. Quality contends that it issued cell phones and cell phone numbers to the MSJ Defendants while they were employed by Quality.[22] According to Quality, these cell phone numbers were used for conducting business on behalf of Quality and customers associated these cell phone numbers with Quality.[23] Quality alleges that two of the MSJ Defendants requested that Quality transfer their cell phone numbers from Quality's cell phone account to their own personal accounts prior to plan confirmation and the transfer of ownership in Quality, and that Collins directed that several other Quality cell phone numbers be transferred to their personal accounts.[24] The MSJ Defendants made this request to Quality's purchasing and inventory manager, and Collins approved the transfer.[25]

The MSJ Defendants, on the other hand, assert that the cell phone numbers at issue were their personal cell phone numbers prior to their employment by Quality; they transferred these numbers to Quality's account so that Quality would be responsible for paying the monthly cell phone bill after they were hired.[26] Only one of the MSJ Defendants, Peter Broussard, did not transfer his own personal cell phone number when he was employed by Quality. The MSJ

---

[21] *Id.* at ¶¶ 162-214.
[22] Unsworn Declaration of Clay Nunnally, Exhibit 1 to Motion for Partial Summary Judgment [ECF No. 16-3 at ¶ 7].
[23] *Id.* at ¶¶ 8.
[24] Unsworn Declaration of Tina Esponge, Exhibit 2 to Motion for Partial Summary Judgment [ECF No. 16-8 at ¶¶ 3-4]
[25] *Id.*
[26] Declarations of Terry Decoux, Robert Berry, Peter Broussard, Emily Cantonwine, Keith Shouest, and Huey Perrin, Exhibits A-F to the MSJ Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment. [ECF Nos. 20-1 – 20-6].

Defendants contend that Quality had, in the past, transferred cell phone numbers to departing employees and that such transfers were within the ordinary course because Quality would not have to pay the monthly charges for those numbers.[27]

Quality contends that the summary judgment record establishes its conversion claim with respect the transferred cell phone numbers as a matter of law and that it is entitled to a judgment requiring the MSJ Defendants to transfer those cell phone numbers back to Quality.

## II.
### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[28] The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial.[29] Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses.[30] If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party.[31] To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact.

---

[27] Declaration of Troy Collins, Exhibit G to the MSJ Defendants' Opposition. [ECF No. 20-7 at ¶¶ 9-11].
[28] Fed. R. Civ. P. 56(a).
[29] *See Matsushita Electric Industries v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
[31] *See Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986).

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing" that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial.[32] If the moving party makes a showing that there is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims.[33] Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor.[34] Under this standard, the non-movant cannot rely on unsupported assertions or arguments but must submit sufficiently probative evidence supporting its claims or defenses. Even if the burden shifts to the non-moving party, the movant still retains the ultimate burden of persuasion on the motion for summary judgment.[35]

In considering a summary judgment motion, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[36] "Credibility determinations are not part of the summary judgment analysis."[37] Rule 56 "mandates the entry of summary judgment . . . against a

---

[32] *Celotex Corp.*, 477 U.S. at 324–326, 106 S.Ct. 2548.
[33] *Id.*
[34] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
[35] *Celotex Corp.*, 477 U.S. at 330–331, 106 S.Ct. 2548.
[36] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[37] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[38]

### III.
### DISCUSSION

The Civil Code does not expressly recognize an independent cause of action for "conversion."[39] Louisiana Courts, however, have inferred a delictual action from the Civil Code for conversion that is "available to an owner dispossessed as a result of an offense or quasi-offense, in other words, a 'tort'."[40] A Louisiana claim for conversion involves "a distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's rights therein."[41] Conversion includes cases where "possession is acquired in an unauthorized manner," where "possession of the chattel is transferred without authority," and where "possession is withheld from the owner or possessor…."[42]

The MSJ Defendants argue that Quality is not entitled to summary judgment on its conversion claims because Collins was the 50% owner and President of Quality at the time the cell phone numbers were transferred and had authority to transfer those numbers on behalf of Quality.[43] The MSJ Defendants also point to evidence that Quality had transferred cell phone numbers to

---

[38] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[39] *Dual Drilling Co. v Mills Equip. Investments, Inc.*, 721 So.2d 853, 856-857 (La. 1998).
[40] *Id.* at 857.
[41] 12 Crawford, LA CIVIL LAW TREATISE-TORTS § 12:13 (2d ed); *Quealy v Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La. 1985) (Conversion "[c]onsists of an act in derogation of the Plaintiff's possessory rights, and any wrongful exercise of assumption of authority over another's goods, depriving him of the possession, permanently, or for indefinite time….").
[42] *Dual Drilling Co.*, 721 So.2d at 857. In *Dual Drilling Co.* both Louisiana Supreme Court recognized other examples of civilian conversion including removing chattel "from one place to another with the intent to exercise control over it," cases where chattel "is altered or destroyed," where chattel "is used improperly," or where "ownership is asserted over the chattel." *Id.* These other conversion fact patterns do not fit Quality's conversion claims to the extent they are bases on the transfer of cell phone numbers to the MSJ Defendants.
[43] Declaration of Terry Decoux, Exhibit A to the MSJ Defendants' Opposition Memorandum. [ECF No. 20-1 at ¶¶ 8-9].

departing employees in the past.[44] Quality, on the other hand, argues that Collins lacked authority to transfer the cell phone numbers for at least two reasons. First, because the transfers occurred after the commencement of the bankruptcy case, 11 USC § 363(b) prevented Collins from disposing of Quality's property without leave of the Court. Second, Quality argues that the May 14th Settlement Agreement prohibited Collins from transferring Quality's property.

11 U.S.C. § 363(b)(1) provides that a debtor in possession must seek leave of the Court to "use, sell, or lease, other than in the ordinary course of business, property of the estate…." Section 363(c)(1), however, provides that "unless the Court orders otherwise, the [debtor in possession] may enter into transactions, including the sale or lease of property of the estate, *in the ordinary course of business*, without notice or hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."[45] The MSJ Defendants contend that section 363(b)(1) does not apply here because the transfers of the cell phone numbers within the ordinary course of Quality's business and, under section 363(c)(1), did not require Court approval. They point to Collins' testimony that employees' cell phone numbers had been transferred to them in the past, including transfers prior to the commencement of the bankruptcy case:

9. For several years and even prior to the filing of the Bankruptcy Case, Quality had, from time to time, released mobile telephone numbers of various employees and transferred payment responsibility for the numbers from Quality to the individual employee.

10. Often times, the numbers were used by an employee prior to the date of first employment with Quality and, sometimes, during or after their employment, payment responsibility for the number was transferred from the employee to Quality such that the number moved to an account under Quality's name. This was viewed as a benefit to the employee.[46]

---

[44] Collins Declaration. [ECF No. 20-7 at ¶¶ 9-11].
[45] 11 USC § 363(c)(1) (emphasis added).
[46] Collins Declaration. [ECF No. 20-7 at ¶¶ 9-10].

The term "ordinary course of business" generally has been accepted "to embrace the reasonable expectations of interested parties of the nature of transactions that the debtor would likely enter in the course of its normal, daily business."[47] The debtor's prepetition conduct and business practices are important factors as to whether a transaction is within the ordinary course of business.[48] A transaction may be within the ordinary course of business even if it does not occur frequently.[49]

Here, Collins' testimony that similar transfers had been made prepetition creates a fact question as to whether the transfer of the cell phone numbers to the MSJ Defendants was within the ordinary course of business. If the transfers were within the ordinary course of business, section 363(b)(1) would not apply and the transfers could be made without "notice and a hearing" under section 363(c)(1). In that case, Quality could not establish that the transfers made by Collins as Quality's President at the time were made without authority based on section 363(b)(1). Quality counters that Collins' testimony is conclusory, unsupported, and thus insufficient to create a genuine question of material fact as to whether the transfers were made in the ordinary course. This testimony, however, is more than an unsworn, unsupported allegation or a conclusory assertion in an affidavit.[50] It may be that discovery ultimately reveals evidence that refutes or undermines Collins' testimony. But for purposes of summary judgment, the testimony creates a genuine question of material fact with respect to whether the transfers were made in the ordinary course under section 363, and the existence of this fact question precludes summary judgment.

---

[47] *In re Lavigne*, 114 F.3d 379, 384–85 (2d Cir. 1997) (quoting *In re Watford*, 159 B.R. 597, 599 (M.D.Ga.1993), *aff'd without opinion*, 61 F.3d 30 (11th Cir.1995)).
[48] *In re Patriot Place, Ltd.*, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013) ("The primary focus is on the debtor's prepetition business practices and conduct.") ; *see also* 3 COLLIER ON BANKRUPTCY ¶ 363.03[1][b] (Richard Levin & Harry J. Sommer eds. 16th ed.) (observing that "transactions of a type that the debtor commonly engaged in, or which the debtor might have been reasonable expected to engage in prepetition, are likely to be within in the ordinary course of business after the commencement of the case, whether or not common in the debtor's industry.").
[49] 3 COLLIER ON BANKRUPTCY ¶ 363.03[1][a].
[50] *See Duffy v Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

Quality's reliance on the May 14th Settlement Agreement for a conversion claim similarly does not support summary judgment. Quality cites a provision from the May 14th Settlement Agreement that requires Collins to turn over "all property and equipment of [Quality] on the Effective Date of the ESNA Plan."[51] This language cited by Quality does not appear to foreclose Collins from disposing of property on behalf of Quality in the ordinary course of business prior to the effective date of the plan. Again, there is a genuine question of material fact as to whether Collins lacked authority to approve the transfer of cell phone numbers prior to the effective date of the plan.

Quality alternatively suggests that, even if Collins had authority to transfer the cell phone numbers, the MSJ Defendants converted the numbers because they refused to transfer the numbers back to Quality when Quality demanded their return:

> Under Louisiana law, even though a party may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute a conversion. *Louisiana Health Care Grp., Inc. v. Allegiance Health Mgmt., Inc.*, 32 So.3d 1144 (La.App. 3 Cir 2010). Here, regardless of how or why they came to possess the phone numbers, [the MSJ Defendants] are now refusing to return them. And such refusal is a violation of [Quality's] property rights in these phone numbers that is actionable under Louisiana law.[52]

The flaw in Quality's argument is that it assumes Quality would still retain rights in the cell phone numbers even if Collins had authority to transfer those numbers to the MSJ Defendants on behalf of Quality. If the transfer was authorized (and, hence, a valid, binding transfer), it would have terminated whatever property interest Quality had in the numbers. Quality would not be entitled to demand the return of phone numbers validly transferred, and the MSJ Defendants' refusal to

---

[51] Quality's Memorandum in Support of Motion for Partial Summary Judgement. [ECF No. 16-1 at 10].
[52] Quality's Reply Memorandum. [ECF No. 21 at 5].

return the numbers would not support a Louisiana conversion claim.[53] In sum, Quality's allegations and summary judgment evidence do not establish a conversion claim – as a matter of law – because there is a genuine question of material fact as to Collins' authority to transfer the cell phone numbers.[54]

## IV.
### CONCLUSION

As explained above, there are genuine questions of material fact with respect to Quality's conversion claims that are based on the transfer of business cell phone numbers to the MSJ Defendants. Accordingly, the Court **DENIES** Quality's Motion for Partial Summary Judgment[55] in its entirety. The Court also **DENIES** the MSJ Defendants' objections to the summary judgment evidence submitted by Quality.

THUS DONE in Chambers on this 29th day of January, 2021.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[53] *See, e.g., F.G. Bruschweiler (Antiques) Ltd. V. GBA Great British Antiques, LLC*. 860 So.2d 644, 650 (La.App. 5 Cir Nov. 25, 2003) ("Although the defendant may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods ***to one who is entitled to them*** may constitute conversion.") (citing *Louisiana State Bar Assoc. v. Hinrichs*, 486 So.2d 116, 121 (La. 1986)) (emphasis added).

[54] Given the Court's conclusion that there are genuine questions of material fact with respect to Collins' authority to transfer the business cell phone numbers to the MSJ Defendants, the Court need not address the MSJ Defendants' argument that a transfer of telephone numbers cannot, as a matter of law, support a conversion claim under Louisiana law. Also, the MSJ Defendants filed objections to the unsworn declarations and exhibits submitted by Quality in support of its Motion for Partial Summary Judgment. In light of the Court's ruling on the motion, those objections are DENIED as moot.

[55] [ECF No. 16]