UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **QUALITY CONSTRUCTION & PRODUCTION L L C** | **CASE NO. 6:19-CV-01308** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **TROY COLLINS ET AL** | **MAGISTRATE JUDGE WHITEHURST** |

**MEMORANDUM RULING**

The present matter before the Court is a Motion for Summary Judgment [ECF No. 43] filed by defendant Troy Collins seeking the dismissal of claims asserted against him by plaintiff Quality Construction & Production, LLC ("Quality"). For the reasons explained below, the Court GRANTS Collins' Motion in part and DENIES the Motion in part.

## I.
### BACKGROUND

This case involves disputes between Quality and its co-founder and former 50% owner, defendant Troy Collins, as well as certain former employees of the company. Quality provides onshore and offshore services for clients in the maritime and energy production industries. These services include spool piping, production modules, manifolds, deck extensions, riser guards and clamps, hook-ups, facilities maintenance and upgrades, compressor installations and field welding. Quality filed a petition for relief under Chapter 11 of the Bankruptcy Code on March 16, 2018.[1] MidSouth was Quality's largest secured creditor at the time of the bankruptcy filing with a claim of $15,455,880.[2] Quality filed its first Joint Plan of Reorganization on November 26, 2018.[3] This

---

[1] *In re Quality Construction & Production, LLC, et al.*, No. 18-50303 (Bankr. W.D., La. March 16, 2018) (Bankr. ECF No. 1).
[2] *Id.* (Bankr. Claims Register at Claim No. 136).
[3] *Id.* (Bankr. ECF No. 362).

1

plan provided that MidSouth's "entire claim will be refinanced in exchange for a lump sum payment of $9,500,000."[4] In return, MidSouth was to "cancel all of its notes and release all of its collateral and guarantees."[5] The plan also created an equity class consisting of Quality's two pre-petition members: Collins and Nathan Granger.[6] The plan provided that Collins and Granger would retain their equity interest in Quality in exchange for a "new value" contribution of $500,000.[7]

MidSouth then assigned its claim to Energy Services Notes Acquisition, LLC ("ESNA").[8] ESNA is controlled by Tony Martinez, a former competitor of Quality.[9] ESNA ultimately filed a competing Joint Plan of Reorganization.[10] This competing plan provided that ESNA's claim would be converted to equity in Quality and the other filing debtors, and that ESNA would also receive a Promissory Note.[11] ESNA's competing plan also provided that the equity interest of Collins and Granger would be cancelled.[12] Quality and ESNA subsequently filed amended plans and engaged in extensive litigation in Bankruptcy Court and state court. Collins, Granger, Quality, and ESNA ultimately agreed to settle their disputes and entered into a settlement agreement on May 14, 2019 (the "First Settlement Agreement").

The First Settlement Agreement provides that Collins and Granger would not oppose ESNA's Joint Plan of Reorganization, including the provisions of the plan providing that their equity interest would be cancelled and ESNA's claim would be converted to an equity interest in the reorganized debtors.[13] The agreement further provided that Collins and Granger would "work

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.* (Joint Notice of Assignment of Claims pursuant to FRBP 3001(e)(2) and Waiver to Opportunity to Object [Bankr. ECF No. 393]). This notice was filed December 28, 2018. *Id.*
[9] Declaration of Troy Collins ("Collins Declaration"), Exhibit 1 to Defendant's Motion for Summary Judgment [ECF No. 43-3].
[10] *In re Quality Construction & Production, LLC, et al.*, No. 18-50303 [Bankr. ECF No. 532].
[11] *Id.* at 8.
[12] *Id.*
[13] Exhibit 1-B to Defendant's Motion for Summary Judgment [ECF No. 43-5]; *In re Quality Construction & Production, LLC*, 18-50303 [Bankr. ECF Nos. 755, 758].

2

in good faith through the Effective Date to effectuate an orderly turnover of all property and equipment, including keys, codes and computer passwords," but states that, after the "effective date," Collins "shall not owe any duty to either the Debtors or Reorganized Debtors [Quality] and there shall be no restriction [on him], without limitation, to compete with the Debtors or Reorganized Debtors or to contact or solicit vendors, customers or employees of the Debtors or the Reorganized Debtors."[14] The First Settlement Agreement also includes global releases. Collins' release states:

> Effective as of the Effective Date, the Plan Proponents, the Intervenors (as defined below), the Debtors and the Reorganized Debtors each hereby release and forever discharge (a) Collins and Granger and their immediate family members (spouses, children, parents and siblings), and (b) Quality USA, Kayro, Offshore Service & Supply, LLC, Stephen Granger, Kaylie Marie Collins and Vallie Theresa Collins (collectively, the ***"State Court Defendant Released Parties"***) from any and all liability for any and all claims, demands, and causes of action of any nature, whether known or unknown, asserted or unasserted, arising out of or related in any way to the dealings between the Parties or the operations or debts of the Debtors, including, but not limited to, (i) all claims brought or that could be brought in the Jointly-Administered Chapter 11 Cases, (ii) all claims brought or that that could be brought in the State Court Suit, (iii) all claims or rights related in any way to the MidSouth Claims or the MidSouth Filings, and (iv) all claims arising from or related to the MidSouth Assignment or the Redemption Motion.[15]

ESNA's final Joint Chapter 11 Plan of Reorganization (the "Plan of Reorganization" or "Quality's Plan of Reorganization") was confirmed after a hearing on May 21, 2019, and on May 22, 2019, the Bankruptcy Court entered a confirmation order (the "Confirmation Order").[16] The controlling equity interest in Quality was transferred to ESNA on the "effective date" of the Plan of Reorganization: May 23, 2019. The "effective date" of the releases in the First Settlement

---

[14] *In re Quality Construction & Production, LLC*, 18-50303 [Bankr. ECF No. 755 at 12]; Exhibit 1-A to Defendants' Motion for Summary Judgment [ECF No. 43-4] at ¶ 16.
[15] *Id.* at ¶ 9 (emphasis in the original).
[16] *Id.*; [Bankr. ECF No. 758].

3

Agreement was May 23, 2019 as well.[17] As per the parties' agreement, Collins' employment with Quality terminated on May 23, 2019.[18]

Shortly after confirmation, Quality filed an adversary proceeding in Bankruptcy Court against Collins and other defendants (the "Adversary Proceeding"), alleging that Collins had misappropriated and converted Quality's property and breached his fiduciary duties.[19] Specifically, Quality alleged that Collins conspired with other parties to remove various pieces of equipment from Quality's premises, including blasting and painting equipment.[20] The parties then quickly entered into a settlement agreement ("Second Settlement Agreement") and requested that the Bankruptcy Court dismiss the Adversary Proceeding.[21] The Second Settlement Agreement provides:

> In consideration for the Payment, the Plaintiffs release and forever discharge Collins from and against any and all claims, liability or causes of action related to or arising out of the facts or allegations set forth in the Adversary Proceeding and/or the Complaint (including the exhibits thereto).[22]

The parties signed the Second Settlement Agreement on June 4, 2019 and the adversary proceeding was dismissed with prejudice.[23]

Quality filed the present action in the district court on October 7, 2019.[24] In this action, Quality alleges that before and after the Effective Date of the confirmed plan, Collins and the other defendants "embarked upon a coordinated scheme of unfair competition against [Quality] for the benefit of themselves and United Production & Construction Services, Inc."[25] United Production

---

[17] Collins Declaration [ECF No. 43-3] at ¶ 10. The effective date of the Plan of Reorganization and the First Settlement Agreement (May 23, 2019) are referred to collectively as the "Effective Date."
[18] Exhibit 1-A to Defendants' Motion for Summary Judgment [ECF No. 43-4] at 23.
[19] Exhibit 4 to Defendant's Motion for Summary Judgment [ECF No. 43-8].
[20] *Id.* at ¶¶ 12-17.
[21] Exhibits 1-B, 6 to Defendant's Motion for Summary Judgment [ECF No. 43-5, 43-11].
[22] ECF No. 43-5 at ¶ 2.
[23] *Id.*
[24] Original Complaint [ECF No. 1].
[25] Original Complaint [ECF No. 1] at ¶ 22.

4

& Construction Services, Inc. ("United") was acquired by Collins and is a competitor of Quality.[26] Quality alleges that this scheme included "converting the assets [Quality], the raiding of [Quality] employees, misappropriation of proprietary data and business records of [Quality], and expenditure of [Quality's] funds for the benefit of themselves and [United]."[27] According to Quality, the former-employee defendants engaged in this conduct while they were still employed by Quality and after they left their employment with Quality and joined Collins at United.[28] Quality's complaint alleges eight causes of action for violations of the Defend Trade Secrets Act (18 U.S.C. § 1836), violations of the Louisiana Uniform Trade Secrets Act (La. R.S. 51:1431 et seq.), violations of the Computer Fraud Abuse Act (18 U.S.C. § 1030), conversion, breach of fiduciary duty, violations of the Louisiana Unfair Trade Practices and Consumer Practices Act (La. R.S. 51:1401 et seq.), conspiracy, and breach of contract.[29]

Collins then filed the present Motion for Summary Judgment seeking dismissal of all the claims asserted against him. Collins first asserts that Quality's claims against him are barred by the global releases in the First Settlement Agreement because these claims are grounded on conduct occurring before the Effective Date of the agreement. Second, Collins contends that Quality's Plan of Reorganization bars Quality's claims against him in the present case. Collins points to provisions in the Plan of Reorganization that adopt the First Settlement Agreement and confirm the releases granted in that agreement. He also contends that plan confirmation is res judicata with respect to the claims asserted by Quality in the present case. Third, Collins contends that the dismissal of the Adversary Proceeding and the release in the Second Settlement Agreement, likewise, bar the claims asserted against him.

---

[26] *Id.*
[27] *Id.* at ¶ 23.
[28] *Id.* at ¶ 24.
[29] *Id.* at ¶¶ 162-214.

## II.
### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial.[30] Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses.[31] If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party.[32] To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact.

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing" that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial.[33] If the moving party makes a showing that there

---

[30] *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).
[31] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
[32] *Calderone v. U.S.,* 799 F.2d 254, 259 (6th Cir. 1986).
[33] *Celotex Corp.,* 477 U.S. at 324-326, 106 S. Ct. 2548.

is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims.[34] Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor.[35] Under this standard, the non-movant cannot rely on unsupported assertions or arguments but must submit sufficiently probative evidence supporting its claims or defenses. Even if the burden shifts to the non-moving party, the movant still retains the ultimate burden of persuasion on the motion for summary judgment.[36]

In considering a summary judgment motion, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[37] "Credibility determinations are not part of the summary judgment analysis."[38] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[39]

### III.
### DISCUSSION

**A. Does the First Settlement Agreement Bar Quality's Claims Against Collins?**

The Court first addresses Collins' arguments with respect to the First Settlement Agreement. That agreement releases Collins from "any and all claims, demands, and causes of

---

[34] *Id.*
[35] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-252, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).
[36] *Celotex Corp.*, 477 U.S. at 330-331, 106 S. Ct. 2548.
[37] *Roberts v. Cardinal Servs Inc.*, 266 F.3d 368, 373 (5th Cir. 2001). *See also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.* 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[38] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[39] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

action of any nature, whether known or unknown, asserted or unasserted, arising out of or related in any way to the dealings between the Parties or the operations or debt of the Debtors...."[40] Paragraph 16 of the First Settlement Agreement states that for "the avoidance of any doubt, this Agreement shall be interpreted broadly to afford the broadest releases as possible and to facilitate a global resolution and the complete walkaway settlement contemplated hereby."[41] Collins argues that all of the claims asserted against him either arise out of or are related to "the dealings between the Parties or the operations or debts of the Debtors" prior to the Effective Date (May 23, 2019) of the First Settlement Agreement and are therefore barred by the release in that agreement. Quality, however, points to provisions in the First Settlement Agreement that impose certain duties and obligations on Collins during the "interim period" between the signing of the agreement and the May 23, 2019 effective date of the agreement. Specifically, Collins agreed:

- to "work in good faith through the effective date to effectuate an orderly turnover of all property and equipment of the debtors, including keys, codes, and computer passwords;"

- to not "materially damage the Debtors' property, machines, equipment, computers, or training facility;"

- that, as of the effective date of the First Settlement Agreement, Collins' employment by Quality would terminate; and

- that he would not oppose ESNA's Plan of Reorganization and would testify at the confirmation hearing.[42]

The First Settlement Agreement provides that, upon a breach of any of these duties, Quality "shall provide written notice with 2 business days to cure."[43] Quality contends that claims based on breaches of the First Settlement are expressly excluded from the release. Quality also argues that

---

[40] Exhibit 1-A to Memorandum in Support of Motion for Summary Judgment [ECF No. 43-4] at ¶9.
[41] *Id.* at ¶16.
[42] *Id.* at ¶ 3.
[43] *Id.*

8

the release does not bar claims based on Collins' actions *after* the Effective Date of the First Settlement Agreement.

Jurisdiction in this case is based, in part, on federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343.[44] However, because the First Settlement Agreement is a Louisiana contract, the Court will look to Louisiana law to construe the scope of the agreement and its releases. The Louisiana Civil Code defines a compromise as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship."[45] As such, a compromise agreement is "governed by the same general rules of construction applicable to contracts."[46] A compromise agreement "is the law between the parties and must be interpreted according to the parties' intent."[47] A compromise agreement "settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express."[48]

Count VIII of the Complaint asserts a breach of contract claim against Collins based on allegations that he breached his contractual obligations under the First Settlement Agreement.[49] Quality's breach of contract allegations involve the pre-Effective Date operations of the debtor and thus appear to fall within the scope of Collins' release. However, the First Settlement Agreement expressly excludes any claims based on a breach of that agreement from the scope of the release provisions: "notwithstanding the foregoing, nothing in these releases shall prevent a Party from making a claim to enforce the terms, representations, warranties, or obligations contained in this Agreement."[50] Accordingly, any claims based on a breach of the First Settlement

---

[44] Original Complaint [ECF No. 1] at ¶ 14.
[45] La. Civ. Code Ann. art. 3071.
[46] *Id.*
[47] *Soileau v. Smith True Value and Rental*, 144 So.3d, 771, 780 (La. 2013).
[48] *Id.* (citing La. Civ. Code Ann. art. 3076).
[49] Original Complaint [ECF No. 1] at ¶¶ 210-214.
[50] Exhibit 1-A to Motion for Summary Judgment [ECF No. 43-4] at ¶9, page 11.

Agreement, including the breach of contract claim in Count VIII of the Complaint, are not barred by Collins' release.

With respect to the other claims asserted against Collins, Quality contends that these claims fall outside the scope of Collins' release because they arise from conduct **after** the May 23, 2019 Effective Date of the First Settlement Agreement and the release only covers claims existing as of the Effective Date. The Civil Code permits "parties to a compromise to settle any difference they may have in the present *or in the future* that is the subject of a lawsuit or ***that could result in litigation***."[51] However, "releases of future actions are narrowly construed," and "if the release instrument leaves any doubt as to whether a particular future action is covered by the compromise, it should be construed not to cover such future action."[52] Although broadly framed, Collins' release is silent as to claims arising after the Effective Date of the First Settlement Agreement. In paragraph 18 of the First Settlement Agreement, the parties represent and warrant that they "may hereafter discover claims or facts in addition to or different from these [they] now know [] or believe [] to be true with respect to the matters related herein," but that it is their intention to "fully, finally and forever and release all such matters, and all claims relative thereto, which do now exist, may exist, or heretofore have existed between the parties."[53] The plain and fair meaning of this language is that the parties agreed to release claims grounded in facts existing as of the Effective Date even if these facts and claims are only discovered after the Effective Date.[54]

---

[51] *Joseph v. Huntington Ingalls Inc.*, ___ So. 3d ___, 2020 WL 499939 at *6 (La. 1/29/20) (citing La. Civ. Code Ann. arts. 3071, 3076, and 3082) (emphasis added); *see also Daigle v. Clemco Industries*, 613 So.2d 619, 622-23 (La. 1993).
[52] *Brown v. Drillers, Inc.*, 630 So.2d 741, 753–54 (La. 1994).
[53] Exhibit 1-A to Motion for Summary Judgment [ECF No. 43-4] at ¶ 18.
[54] In a different context, the language "may exist" could be read to encompass claims arising in the future. But not in the context of paragraph 18 when the provision is read as a whole. *Brown*, 630 So.2d at 753-54. In any event, this language creates doubt as to whether the parties intended to include in the scope of the release claims arising after the Effective Date. Accordingly, the First Settlement Agreement will not be construed to cover such claims.

Accordingly, this release is limited to pre-Effective Date claims and does not bar claims that arose after May 23, 2019.

It is not clear from the allegations of the Complaint whether the claims asserted against Collins are pre- or post-Effective Date claims. Most of the allegations against Collins do not identify the specific time frame of the conduct underlying the claims; nor is any time frame suggested by the context of the conduct underlying the claims. The context of some allegations appears to involve conduct occurring after May 23, 2019. For example, paragraph 36 of the Complaint alleges that Collins "conspired with the other individuals defendants to commit unlawful acts against QCP, including breaches of the fiduciary duties owed to QCP and the conversion of QCP property by other individual defendants for the benefit UPCS [Collins' new company, United Production & Construction Services]."[55] The allegations in the Complaint suggest that Collins joined UPCS after his termination on May 23, 2019.[56] Other allegations reference conduct "before and after" Collins left Quality, while some allegations are based on actions occurring before the Effective Date. The current summary judgment record does not clarify the time frame of Quality's claims or otherwise enable the Court to determine, as a matter of law, the claims that are subject to the Collins' release. Accordingly, the Court **DENIES** the Motion for Summary Judgment with respect to Collins' argument that the First Settlement Agreement bars Quality's claims against him.[57]

**B. Does Plan Confirmation Bar Quality's Claims Against Collins?**

Collins further argues that the Bankruptcy Court's confirmation order bars Quality's claims against him. Quality's Plan of Reorganization expressly references the terms of the First

---

[55] *Id.* at ¶ 36.
[56] *See also Id.* at ¶ 40 ("Collins also directed Lance Romero, a third-party consultant providing computer and information technology services to QCP to make copies of QCP operating data for Collins and to provide Collins with unauthorized access to the QCP email system *following Collins' departure from QCP*.") (emphasis added).
[57] It may well be that additional discovery will allow Collins to create a summary judgment record that permits the Court to determine, as a matter of law, which claims, if any, fall within the scope of the release.

Settlement Agreement as well as the parties' releases in that agreement.[58] The Bankruptcy Court's order confirming the Plan of Reorganization approves the terms of the First Settlement Agreement, including the parties' releases.[59]

A Chapter 11 plan may include provisions that result in "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[60] Once the plan is confirmed, any settlement or adjustment provisions in the plan are binding on the parties. These provisions are binding because a Bankruptcy Court's plan confirmation order, when final, is a judgment that is "res judicata to the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might be offered for that purpose."[61] Moreover, 11 U.S.C. § 1141(a) provides that "the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan."

The confirmation of Quality's Plan of Reorganization binds the parties to the terms of the plan, including the approval of the First Settlement Agreement and the releases contained in that agreement, and thus bars Quality from asserting any claims released in that agreement. However, as with Quality's previous argument that relies solely on the Collins release, the summary judgment record is not clear as to the timing of the conduct giving rise to Quality's claims against

---

[58] Sixth Amended Joint Amended Plan of Reorganization as Modified, In re. Quality Construction & Production, 18-50303 [Bankr. ECF No. 755] at ¶ 7.2.
[59] Order Confirming Sixth Amended Joint Plan of Reorganization as Modified, 18-50303 [Bankr. ECF No. 758] at ¶ 39.
[60] 11 U.S.C. § 1123(b)(3)(A).
[61] *In re Linn Energy L.L.C.*, 927 F.3d 862, 866-67 (5th Cir. 2019) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152 (2009)).

12

Collins and whether those claims arose before or after the Effective Date. This is fatal to summary judgment because the Court has already ruled that the Collins release does not encompass post-Effective Date claims; the settlement provisions in the Plan of Reorganization may be binding but they do not exceed the scope of the parties' releases. Accordingly, the Court cannot grant summary judgment based on the res judicata effect of plan confirmation based on the present summary judgment record.

The contract claim against Collins in Count VIII of the Complaint, however, presents a different case. Confirmation of Quality's Plan of Reorganization bars Quality's breach of contract claim even though that claim is expressly excluded from the release in the First Settlement Agreement. The reason for this result is that, here, Quality is suing as the "reorganized debtor" and therefore lacks standing to litigate pre-confirmation causes of action that were property of the estate but not expressly retained in the Plan. The commencement of a bankruptcy case creates an estate that includes "all legal or equitable interest of the debtor and property as of the commencement of the case."[62] The estate includes all of a debtor's legal claims and causes of action.[63] While the estate is usually limited to pre-petition causes of action under 11 U.S.C. § 541(a)(1), post-petition "causes of action that arise from the administration of the chapter 11 estate are property of the estate" under section 541(a)(7).[64] A debtor in possession possesses most of the powers of a bankruptcy trustee, including the power to administer estate property.[65] Accordingly, a debtor in possession has standing to administer pre-petition claims as well as post-petition (but pre-confirmation) claims on behalf of the bankruptcy estate.[66] Once a

---

[62] 11 U.S.C. § 541(a)(1).
[63] *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In Re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008),
[64] *In re Greenhaw Energy, Inc.*, 359 B.R. 636, 642 (Bankr. S.D. Tex. 2007); 11 U.S.C. § 541(a)(7) (the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case.")
[65] *Dynasty Oil & Gas, L.L.C. v. Citizens Bank (In Re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008),
[66] *ASARCO, LLC v. Montana Resources, Inc.*, 514 B.R. 168, 183 (S.D. Tex. 2013).

Chapter 11 plan is confirmed, however, "the debtor loses its debtor-in-possession status and with it, standing to pursue the estate's claims," *including pre-confirmation estate claims*.[67] The only exception is when a confirmed plan of reorganization expressly reserves a claim or cause of action.[68] 11 U.S.C. § 1123(b)(3)(B) states that a plan may "provide for … the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest." The Fifth Circuit, however, requires that any such reservation of claims be "specific and unequivocal."[69]

Here, Quality's breach of contract claim against Collins is necessarily a *pre-confirmation* estate claim. That claim is grounded on alleged breaches of the obligations and duties in the First Settlement Agreement that relate solely to the period prior to the May 23, 2019 Effective Date of the Agreement and Quality's Plan of Reorganization. By definition, any breaches of those obligations had to occur prior to the Effective Date of the Plan.[70] It is also a pre-confirmation *estate* claim because it arose from the administration of the chapter 11 estate; specifically, it arose out of a contract entered into by the debtor in possession that imposes duties on Collins and others to protect and preserve estate property prior to the Effective Date.[71] Under section 1123(b)(3)(B), the Plan of Reorganization could have retained a breach of contract claim arising from these obligations. The Plan, however, not only fails to specifically and unequivocally reserve pre-confirmation claims against Collins, the plan expressly disclaims them: "the reorganized debtors

---

[67] *Id.; In Re MPF Holdings US LLC*, 701 F.3d. 449, 453 (5th Cir. 2012); *Spicer v. Laguna Madre Oil & Gas II, LLC (In Re Texas Wyoming Drilling, Inc.)*, 647 F.3d 547, 550 (5th Cir. 2011).
[68] *In Re MPF Holdings US LLC*, 701 F.3d at 453.
[69] *Texas Wyoming Drilling, Inc.*, 647 F.3d at 550; *United Operating, LLC*, 540 F.3d at 355.
[70] For example, paragraph 3(d) of the Fist Settlement Agreement specifically ties Collins' obligation to the period "through the Effective Date." Also, paragraph 16 of the agreement states that Collins "shall not owe any duty to either the Debtors or the Reorganized Debtors" after the Effective Date. Exhibit 1-A to Motion for Summary Judgment [ECF No. 43-4].
[71] Exhibit 1-A to Memorandum in Support of Motion for Summary Judgment [ECF No. 43-4] at ¶3.

*are not retaining* any claims, causes of action and enforceable rights against…Troy Collins…."[72] As a result, Quality lost its standing to pursue a contract claim against Collins based on the First Settlement Agreement once the Plan of Reorganization was confirmed. The Court thus **GRANTS** the Motion for Summary Judgment with respect to Quality's breach of contract claim asserted in Count VIII of the Complaint.

### C. Does the Second Settlement Agreement Bar Quality's Claims Against Collins?

Finally, Collins argues that the release in the Second Settlement Agreement and the dismissal with prejudice of the Adversary Proceeding bar Quality's claims against him. As with the First Settlement Agreement, the Second Settlement Agreement "settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express."[73] The release in the Second Settlement Agreement releases Collins from "any and all claims, liability or causes of action related to or arising out of the facts or allegations set forth in the Adversary Proceeding and/or the [Adversary] Complaint (including the exhibits thereto)."[74] Based on the language of the release, the Court must look to the allegations of the Adversary Complaint to determine the scope of the release. The Adversary Complaint alleges that Collins and others unlawfully removed certain specified equipment from Quality's premises prior to May 23, 2019. Specifically, the Adversary Complaint alleges that:

- "…on or about May 1, 2019, ESNA discovered that certain employees of the Quality Companies were in the process of blasting and painting equipment and that some equipment had been recently removed from the yard;"[75]

- "…additional information came to light, including photographs, suggesting that unusual activity was going on in the back yard, ostensibly for the

---

[72] Sixth Amended Plan of Reorganization as Modified, Exhibit 3 to Motion for Summary Judgment [ECF No. 43-7] at ¶ 7.3.
[73] *Soileau*, 144 So.2d at 780 (citing La. Civ. Code Ann. art. 3076).
[74] ECF No. 43-5 at ¶ 2.
[75] Adversary Complaint at ¶ 12, *Quality Construction & Production, LLC, et al. v. Collins, et al.*, Adversary Proceeding ("AP") No. 19-05031 [AP ECF No. 1].

purpose of loading Conex boxes to ship out. The photographs were of tool houses, cylinder racks, and toolboxes being primed a red color along with a second coat of beige. Also, a few 8' x 8' toolboxes were top coated gray. Plaintiffs believe that such activities were ultimately ordered by Collins;"[76]

- "Mr. Fucich [a private investigator hired by Quality] obtained video on May 10, 2019 at about 12:30 p.m. of a flatbed truck departing the Quality Companies' facility with two-wheeled tanks painted primer gray without any logos;"[77]

- "on May 10, 2019, an unidentified yellow piece of equipment incased in a gray frame was observed departing the Quality Companies' yard;"[78]

- "On May 13, 2019, a similar piece of equipment was observed not far from the Abbeville, Louisiana yard of another entity with presumably some business connection to the Quality Companies;"[79]

- "On May 11, 2019, video was obtained showing a white truck pulling a gooseneck trailer and a blue tractor with flatbed trailer departing the Quality Companies' facility loaded with gray painted Conex boxes and several large pieces of unidentified equipment painted gray;"[80]

- "On May 13, 2019, additional video reflects three different logos on the gray painted equipment, namely logos from G&M, Gulf America Rentals, and Expediters and Production Services Company ("EPS");"[81]

- "Gulf America Rentals personnel confirmed on May 24, 2019 that the equipment containing its logo was not in fact its equipment. Similarly, G&M personnel confirmed on May 28, 2019 that the equipment containing its logo was not in fact its equipment;"[82]

- "Collins' son Joshua Duplantis and/or a company he owns, OSS, is in possession of some of the equipment spirited away under the direction of Collins;"[83]

- "…a smaller portion of the missing items are located at Collins's home and some are in storage under the control of Collins. Combined with the cost of

---

[76] *Id.*
[77] *Id.* at ¶ 13.
[78] *Id.* at ¶ 14.
[79] *Id.*
[80] *Id.* at ¶ 15.
[81] *Id.* at ¶ 16.
[82] *Id.*
[83] *Id.* at ¶ 18.

> successfully retrieving the other equipment, the current damage to the Reorganized Debtors amounts to at least $200,000;"[84]

- "Plaintiffs have just discovered that a former employee of the debtors, Broussard, deleted all information from his company computer and also removed a valuable operations board from the Quality Companies' facility without authority prior to his recent departure. Upon information and belief, Broussard intends to join Collins in a new venture in competition with [Quality]."[85]

Quality and the other plaintiffs in the Adversary Proceeding requested that the Bankruptcy Court enter a judgment (1) requiring that Collins and the other named defendants turn over all Quality equipment still in their possession, (2) avoiding post-petition transfers under 11 U.S.C. § 549 and § 550, (3) enforcing the Plan of Reorganization, and (4) granting declaratory and injunctive relief.[86] When the parties settled the case, the plaintiffs filed a motion to dismiss the Adversary Proceeding and represented that "plaintiffs have recovered, through one means or another, ***all of the equipment the subject of this adversary proceeding*** and have further reached a confidential settlement with defendant Troy D. Collins as to all other counts sufficient to warrant an order dismissing the suit in its entirety with prejudice, at the parties' respective costs."[87]

Based on the allegations of the Adversary Complaint, the Court concludes that the release in the Second Settlement Agreement does not bar the claims asserted in the present action. While the present action and the Adversary Proceeding both include general allegations that Collins converted (or assisted in the conversion of) Quality's property, the conversion allegations in the Adversary Complaint identify specific items of equipment that, at the termination of the Adversary Proceeding, Quality represented had been returned. In the present case, Quality's conversion allegations are not grounded on the conversion of the same equipment and are broadly framed to

---

[84] *Id.*
[85] *Id.* at ¶ 20.
[86] *Id.*
[87] Exhibit 6 to Motion for Summary Judgment [ECF No. 43-11] at ¶ 2.

17

include allegations that Collins and others engaged in a course of unfair competition. In short, the claims in the present case are not "related to or arising out of the facts or allegations set forth in the Adversary Proceeding and/or the [Adversary] Complaint."[88] Moreover, the relevant time frame of the two actions differ. The Adversary Proceeding focusses almost entirely on Collins' conduct prior to his termination on May 23, 2019. The present case, in contrast, alleges conduct occurring before and after May 23rd. In sum, the release in the Second Settlement Agreement does not bar, as a matter of law, the claims asserted against Collins in the present case.

Nor does the dismissal of the Adversary Proceeding with prejudice bar Quality's claims on res judicata grounds. "The res judicata effect of a prior judgment is a question of law...."[89] The res judicata doctrine "encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion."[90] Here, Collins appears to rely on the "claim preclusion" prong of the doctrine. This prong of the res judicata doctrine requires proof that "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."[91] The Fifth Circuit has adopted a "transactional test" to determine "whether two suits involve the same claim or cause of action."[92] Under this test, the court's inquiry focusses on whether the two cases are based on "the same nucleus of operative facts," not "the type of relief requested, substantive theories advanced, or types of rights asserted."[93] Whether a factual grouping constitutes "the same nucleus of operative facts" is "to be determined pragmatically, giving weight

---

[88] Exhibit 1-B to Motion for Summary Judgment [ECF No. 43-5] at ¶ 2.
[89] *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 550 (5th Cir. 2011) (quoting *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004)).
[90] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).
[91] *Singh*, 428 F.3d at 571.
[92] *Houston Prof'l Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016)
[93] *Id.* (quoting *U.S. v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007)).

to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[94]

The claims asserted in the Adversary Proceeding are based on facts that are distinct in time and nature from the facts underlying the present case. While both cases allege conversion and bad faith, the claims in the two cases are grounded on different facts. The Adversary Proceeding was based on the conversion of specific, enumerated items of equipment and an operations board. The plaintiffs in the Adversary Proceeding represented that the items of equipment that were the subject of the proceeding had been recovered when they requested that the Bankruptcy Court dismiss the case. This equipment is not the subject of the conversion claims in the present case. For example, Quality alleges in the present case that Collins and the other defendants converted customer information and business cell phone numbers.[95] The facts alleged in the two cases are also temporally distinct. The acts of conversion alleged in the Adversary Proceeding were largely based on an investigator's report detailing equipment transfers before the Effective Date of the Plan of Reorganization and the transfer of control of Quality to ESNA.[96] While Quality bases its claims in the present case on some pre-Effective Date conduct,[97] the claims here allege conduct occurring after the Effective Date. In sum, neither the Second Settlement Agreement nor the dismissal of the Adversary Proceeding bar the claims asserted against Collins in the present action as a matter of law. Accordingly, the Motion for Summary Judgment is **DENIED** with respect to the Second Settlement Agreement.

---

[94] *Petro–Hunt, L.L.C. v. U.S.*, 365 F.3d 385, 396 (5th Cir. 2004) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2)).
[95] Original Complaint [ECF No. 1] at ¶ 34.
[96] Exhibit 4-A to Motion for Summary Judgment [ECF No. 43-9].
[97] For example, Quality's allegations that Collins assisted other defendants in converting business cell phone numbers involve pre-Effective Date transfers of cell phone numbers from Quality's cell phone account. *Id.*

# IV
## CONCLUSION

For the reasons stated above, the Court **DENIES** in part and **GRANTS** in part Collins' Motion for Summary Judgment.[98] The Court **GRANTS** the motion with respect to the breach of contract claim against Collins in Count VIII of the Complaint. That claim is DISMISSED WITH PREJUDICE. In all other respects, the Motion for Summary Judgment is **DENIED** without prejudice to its being re-urged after the completion of discovery, when the parties are able to provide a more complete summary judgment record.

THUS DONE in Chambers on this 24th day of February, 2021.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[98] [ECF No. 43].